UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 3:15-cr-14-GFVT-REW |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| BRIAN C. WALTERS., *et al.*, | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

A federal criminal defendant in the United States is generally charged by way of an indictment returned in open court by a grand jury. An indictment gives a defendant notice of the crimes charged against him so that he can adequately prepare a defense. Federal Rule of Criminal Procedure 12(b) allows for the dismissal of an indictment prior to trial if the charging document suffers from certain defects. Defendant Brian C. Walters seeks relief from the Court under this Rule. Walters has moved the Court for dismissal of the Indictment returned against him in November 2015 on the ground that the Indictment—which charges Walters with conspiracy and healthcare fraud—fails to actually allege a violation of law. Because the Indictment complies with the requirements of the United States Constitution, however, the Defendant's Motion to Dismiss will be DENIED.

**I**

On November 5, 2015, a federal grand jury returned an Indictment in open court against Defendants Robert L. Bertram, Jr., M.D.; James W. Bottom; Robin G. Peavler, M.D.; Brian C. Walters; and Bryan S. Wood, M.D. [R. 1.] The Indictment charges the five Defendants with one

count of conspiracy to defraud a healthcare benefit program in violation of 18 U.S.C. § 1349 and ninety-nine counts of healthcare fraud in violation of 18 U.S.C. § 1347. [*Id.*] The Indictment also contains a forfeiture allegation. [*Id.*]

According to the factual background set forth in the Indictment, Dr. Robin Peavler and Dr. Bryan Wood co-owned and operated SelfRefind, a chain of substance abuse treatment clinics headquartered in Danville, Kentucky. [*Id.* at 2.] Dr. Peavler and Dr. Wood, along with Dr. Bertram, Mr. Bottom, and Mr. Walters, also owned and operated PremierTox, Inc., a clinical laboratory in Russell Springs, Kentucky, which performed urine drug testing. [*Id.* at 2-3.] In or around October 2010, Dr. Peavler and Dr. Wood began referring all urine samples from patients at SelfRefind to the PremierTox laboratory for a quantitative drug test, regardless of the results of any qualitative drug test results SelfRefind had previously obtained for a particular patient.[1] [*Id.* at 6.] The five Defendants, as co-owners of PremierTox, agreed to collect SelfRefind's urine samples despite the fact that PremierTox was not yet capable of performing the tests. [*Id.*] Thousands of urine samples were transported from SelfRefind and stored in freezers at PremierTox, until PremierTox's laboratory equipment was properly functioning. [*Id.*]

In or around April 2011, PremierTox began performing quantitative drug tests. The laboratory prioritized the testing of fresh urine samples, but it tested the SelfRefind frozen urine samples when able. PremierTox then used its billing company, Liberty Billing, to submit claims to Medicare, Medicaid, Anthem, Bluegrass Family Health, and other private payors, for payment for the drug tests. [*Id.*] The Indictment alleges that between April 2011 and October 2011, over

---

[1] According to the Indictment, qualitative drug testing was generally used to determine the presence or absence of a drug in a patient's urine sample. The result of a qualitative test was expressed in non-numerical terms, with a negative or a positive result. Quantitative drug testing was generally used when it was medically necessary to determine a specific quantity of a drug or drug metabolite present in a patient's urine sample. The result of a quantitative test was expressed in numerical terms. [*See* R. 1 at 5.]

one thousand frozen urine samples from SelfRefind were tested, and billed for, by PremierTox months after the samples were initially collected. Thus, the tests on the frozen samples were medically unnecessary when PremierTox performed and billed for them. [*Id.* at 7.] The Indictment states that each of the five Defendants received $600,000 in owner distributions from PremierTox between April 2011 and October 2011, and that the Defendants purchased, with company funds derived from their scheme to defraud, a condominium in Colorado for $2,000,000. [*Id.*] The Government, in addition to a conviction for conspiracy and healthcare fraud against each Defendant, seeks the forfeiture of the Colorado property and a money judgment in the amount of the proceeds from the Defendants' allegedly fraudulent operation. [*Id.* at 13-14.]

Defendant Brian Walters has moved to dismiss the Indictment on the basis that it fails to allege a violation of law. [*See* R. 61.] The Court heard oral argument on the issue in mid-March and now considers whether the Indictment, as it relates to Mr. Walters, survives his motion to dismiss.

**II**

Federal grand jury indictments have a purpose. As the Supreme Court explained in *Russell v. United States*, our use of the indictment today is rooted in the guarantees set forth in the Fifth and Sixth Amendments to the United States Constitution. *See* 369 U.S. 749, 760-61 (1962). The Fifth Amendment provides that "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . . ." U.S. CONST. amend. V. And according to the Sixth Amendment, "In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation . . . ." U.S. CONST. amend. VI. Out of this constitutional framework comes two criteria for federal

3

indictments: First, an indictment must set forth the elements of the offense charged, thereby giving notice to a defendant of the accusations he must face. Second, an indictment must be sufficiently specific so that a defendant may plead double jeopardy, if charged in a subsequent proceeding with the same crime based on the same facts. *See Russell*, 369 U.S. at 763-64; *United States v. Martinez*, 981 F.2d 867, 872 (6th Cir. 1992). With these requirements in mind, the Court considers whether the Indictment returned against Defendant Walters passes constitutional muster.

      Walters attacks the Indictment primarily by arguing it fails to state a violation of law. In his motion to dismiss and during oral argument, Walters emphasizes that a lack of medical necessity for a procedure or test does not always equate criminal fraud. Walters contends there must be some false representation for criminal liability to lie, an element he claims is absent from the Indictment returned against him. The Indictment alleges the Defendants submitted medically unnecessary urine drug screens to Medicare, Medicaid, Anthem, and other private health plans. In response, Walters argues that as a lab owner he had no personal duty to evaluate the medical necessity of the tests or to determine whether the test results were used directly for patient care. Further, he claims the Indictment sets forth no evidence of any intent to deceive or any falsity—at most, he contends the Indictment supports a civil, rather than criminal, case.

      Despite Walters' thoughtful argument, the Court finds the Indictment satisfies the two constitutional requirements articulated above. The first requirement is satisfied because the Indictment adequately informs Defendant Walters of the criminal charges brought against him. *See Russell*, 369 U.S. at 763. The Indictment charges Mr. Walters with one count of conspiracy in violation of 18 U.S.C. § 1349, alleging the purpose of the conspiracy was for all five of the Defendants to "unlawfully enrich themselves by (a) submitting false and fraudulent claims to

4

Medicare, Medicaid, and private health plans, for services that were medically unnecessary and that were not eligible for reimbursement, and (b) diverting proceeds of the fraud for the personal use and benefit of the defendants." [*See* R. 1 at 8-9.] The Indictment goes on to describe the manner and means of the Defendants' conspiracy as follows: "[the Defendants] submitted and caused to be submitted to Medicare, Medicaid, Anthem, Bluegrass Family Health, and other private health plans, claims for services, specifically, for urine drug tests that were not medically indicated or necessary to those beneficiaries, and the results of which were not used in directing the care of the patient." [*Id.* at 9.] The Indictment also includes a table of medically unnecessary urine drug screens, which forms the basis for the ninety-nine charged counts of healthcare fraud in violation of 18 U.S.C. § 1347. [*Id.* at 10-13.] The document clearly and adequately informs Mr. Walters of the crimes with which he is charged, such that he and counsel can prepare a defense to the Government's allegations.

Further, the Indictment satisfies the second constitutional requirement, as it is sufficiently specific to allow Walters to plead double jeopardy in a proceeding going forward. *Russell*, 369 U.S. at 764. The Indictment sets forth the dates the allegedly unnecessary urine samples were collected and tested, the beneficiaries' initials, and the payors for each of the ninety-nine healthcare fraud counts charged. [R. 1 at 10-13.] Based on this charging document, Walters should have no trouble raising a double jeopardy defense should he be charged with a similar crime at any future point in time.

While Walters argues he had no intent to deceive, courts have determined that an indictment may sufficiently allege willfulness merely by citing the appropriate sections of the United States Code. *Martinez*, 981 F.2d at 872; *see also United States v. Arteaga-Limones*, 529 F.2d 1183, 1200 (5th Cir. 1976) (finding an indictment sufficiently alleged willfulness where it

5

cited the appropriate statute and that "a pleading is good if it fairly imports knowledge or intent"). Moreover, this case is distinct from *United States v. Levin*, where an indictment was dismissed in light of undisputed extrinsic evidence that the defendants could not formulate the necessary intent required for a criminal conviction. 973 F.2d 463, 466-69 (6th Cir. 1992). In that case, all parties agreed that the indictment adequately stated the elements of a criminal offense. Nevertheless, based on extrinsic evidence, the court concluded the prosecution was, as a matter of law, incapable of proving the requisite intent beyond a reasonable doubt. *Id.* at 470. Neither Defendant Walters nor the Government has introduced extrinsic evidence sufficient to conclusively disprove one of the counts of the Indictment or any elements of the charged crimes. At most, the parties have raised a factual issue about whether or not a clinical laboratory operator like Mr. Walters had a responsibility to verify whether the frozen urine samples were medically necessary before billing for the tests on those samples to Medicare, Medicaid, and other private insurers. [*Compare* R. 61 at 4-6 (arguing Walters had no responsibility to evaluate whether test results were ultimately used for patient care) *with* R. 64 at 5 (maintaining Walters agreed to bill only for services rendered for a legitimate medical purpose when he enrolled the laboratory with Medicare).]

    Both sides wade into the waters of trial rather than dispositive motion practice. The parties' arguments about the merits of the charges and the sufficiency of the evidence as it relates to Mr. Walters are best suited for a jury. If an indictment is valid on its face, it may not be dismissed on the ground that it is based on inadequate or insufficient evidence. *See United States v. Williams*, 504 U.S. 36, 54 (1992). The Court considers only those objections that are "capable of determination without the trial of the general issue." Fed. R. Crim. P. 12(b)(2); *see also United States v. Knox*, 396 U.S. 77, 83 n. 7 (1969).

Whether or not the proof ultimately shows that Walters had an intent to defraud is immaterial at this stage. His argument that he had no intent to deceive fails to overcome the Indictment, as intent is ordinarily a question for the fact finder and not the Court. *See, e.g., United States v. Daniel*, 329 F.3d 480, 487 (6th Cir. 2003). Further, his argument that the Indictment fails to allege some specific falsity or fraudulent representation requires too much. The Indictment charges Walters with knowingly and willfully billing payors for "materially false and fraudulent claims for services, specifically, for urine drug screens that were not medically indicated or necessary to those beneficiaries, and the results of which were not used in directing the care of the patient." [R. 1 at 10.] This is sufficient to put Walters on notice of the charges which he must defend against such that he can adequately do so. Should the evidence fail to show at trial that he did, in fact, have a duty to determine medical necessity before submitting claims for the frozen urine sample tests or that he possessed the *mens rea* required for a criminal conviction under 18 U.S.C. §§ 1349 or 1347, the jury will return an appropriate verdict. The Indictment in this case has served its purpose and consequently is not fatally defective.

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that the Defendant's Rule 12(b) Motion to Dismiss the Indictment [R. 61] is **DENIED**.

This the 12th day of April, 2016.

Gregory F. Van Tatenhove
United States District Judge

7